**In re A & T TRAILER PARK, INC., Debtor.**

**Bankruptcy No. 84–00752–A.**

United States Bankruptcy Court, D. Wyoming.

May 13, 1985.

Gary A. Barney, Lander, Wyo., Trustee.

Steve Jones, Cheyenne, Wyo., for respondent.

## MEMORANDUM DECISION

HAROLD L. MAI, Bankruptcy Judge.

THIS MATTER came before the court on April 22, 1985, on the trustee's Notice of Intent to Abandon and the Objection thereto by the State of Wyoming; Gary A. Barney for himself as trustee; L.M. Chipley, Western Law Associates, P.C., Lander, Wyoming, for the debtor; Steve Jones for the State of Wyoming; and Robert Anderson, Riverton, Wyoming, for certain owners of mobile home lots.

In this proceeding the court is called upon to determine the novel question of whether, under 11 U.S.C. § 554, the trustee in a Chapter 7 no-asset case may abandon property of the estate while such property is in a condition of non-compliance with the environmental laws of the State of Wyoming.

### Factual Background

■ The debtor, A & T Trailer Park, Inc., is a Wyoming corporation with its only business the ownership and operation of a mobile home park in Riverton, Wyoming. On October 16, 1984, the debtor filed for relief under Chapter 7 of the Bankruptcy Code. Gary A. Barney is the duly appointed, qualified, and acting trustee. On December 10, 1984, the State of Wyoming obtained a Judgment and Order against the debtor in the District Court of Wyoming, Ninth Judicial District, for the debtor's failure to obey orders of the Environmental Quality Council regarding a waste water treatment plant at the mobile home park.[1] Said Judgment and Order required the debtor to immediately make repairs and otherwise bring the waste water treatment plan into compliance with state environmental laws. On March 7, 1985, the trustee filed a Notice of Intent to Abandon the mobile home park, including the waste water treatment plant which was the subject of the state court judgment and order. On March 8, 1985, the State of Wyoming filed an objection to the proposed abandon-

---

1. The parties do not dispute that the state court proceedings to compel the debtor to comply with state environmental laws is a "proceeding by a governmental unit to enforce such a governmental unit's police or regulatory power" which is not affected by the automatic stay. 11 U.S.C. § 362(b)(4).

ment of the mobile home park on the grounds that the trustee should not be allowed to abandon the property without first assuring that the property will be brought into compliance with state environmental quality laws.

The testimony adduced at the hearing established the facts as follows:

The First Interstate Bank of Riverton holds a first mortgage on the subject mobile home park to secure an indebtedness of $480,000. The bank apparently has no interest in taking control of the property at this time. The president and major stockholder in the debtor has left the state and shows no interest in the future disposition of the mobile home park. The mobile home park is presently in a state of virtual abandonment. The only current residents are mobile home owners who have purchased their individual lots from the debtor. The park is in an extreme state of disrepair, rubbish and weeds have accumulated on the property. The access road to the park and the roads within the park are in very poor condition. There is no landscaping, sidewalks, or other amenities in the park. According to the representations of Robert Anderson, counsel for the 12–15 lot owners, it would require anywhere from $15,000 to $40,000 to make the necessary repairs to bring the waste water treatment plant into compliance with environmental laws. The lot owners contemplate installing systems on their individual lots which would allow them to bypass the disputed treatment plant and discharge waste through individual private sewage systems.

There are six (6) other mobile home parks in the area, most of which have better access, much better streets, and many amenities, such as landscaping, sidewalks, parks, and a working sewage system, all of which the A & T Trailer Park lacks. Due to the depressed state of the economy in the Riverton area, the competing mobile home parks presently have vacancy rates of 30% to 50% with the result that there are approximately 250 other mobile home spaces currently available in the area. In view of this situation, it is doubtful that the spaces in the A & T Trailer Park could be rented in their current condition, even at nominal rates. Considering the current market conditions in the area, and the extremely run-down state of the property, the estimated value of the park is $50,000.

## DECISION

A Chapter 7 trustee's principal duty is to "collect and reduce to money the property of the estate for which [he] serves, and to close such estate as expeditiously as is compatible with the best interests of the parties in interest." 11 U.S.C. § 704(1); 4 COLLIER ON BANKRUPTCY ¶ 704.01 at 704-4 (15th ed. 1985) (the main object and purpose for a Chapter 7 trustee is expeditiously closing the estate). In furtherance of this objective, Section 554 of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." Prior to the enactment of the 1978 Bankruptcy Reform Act, the courts had implied a power on the part of the trustee to abandon property in a liquidation case. *See, Ottenheimer v. Whitaker,* 198 F.2d 289 (4th Cir.), aff'g. 102 F.Supp. 913 (D.Md. 1952). Section 554 of the 1978 Act codified the prior case law, expressly authorizing the trustee to decline to undertake responsibility for property that cannot benefit the estate. 4 COLLIER ON BANKRUPTCY, *supra* at 554-2 to 554-5.

In the present case, it is clear that with a first mortgage of over $480,000 as well as a second mortgage of an undetermined amount, and considering the inability of the property to produce income, and its present market value of merely $50,000, that the mobile home park has absolutely no value or benefit to the estate. It is equally clear that the mobile home park is burdensome to the estate. The trustee continues to incur expenses in maintaining and preserving this property. Thus, the property squarely is within the category of property which the trustee is authorized to abandon under Section 554.

Despite this, it is the position of the State of Wyoming that the trustee should not be allowed to abandon this property unless and until he has complied with the state court order and brought the property into compliance with Wyoming environmental quality laws. In support of this proposition, the state relies on the recent Third Circuit case of *Matter of Quanta Resources Corp.*, 739 F.2d 912 (3rd Cir.1984). In that case, the Third Circuit held that § 554 of the Bankruptcy Code did not permit a bankruptcy trustee to abandon property in contravention of state environmental laws. In *Quanta,* the property in question was a waste oil storage and processing facility where tens of thousands of gallons of extremely hazardous chemicals were stored. The Third Circuit noted that to allow the trustee to abandon the property, including the stored hazardous chemicals, would constitute "disposal of hazardous waste" within the meaning of the New York state laws prohibiting unsafe disposal of such hazardous waste.

■ *Quanta* may be distinguished from the present case in two important respects. First, in *Quanta* it was the act of abandonment itself which constituted the violation of the New York state law because it was a "disposal" of hazardous waste. *Id.* at 914. In the present case, it is doubtful if the act of abandonment itself is a violation of the Wyoming environmental laws, rather it appears that it is the operation of a waste water treatment plant which violates the Wyoming law. *See* § 35–11–301 et seq., W.S.1977, 1984 Cum.Supp. Second, and in this court's view the crucial distinction, is that unlike *Quanta* and the other cases relied upon by the state, the present case is a no-asset case. In *Quanta,* the court weighed the public policy advanced by abandonment, preservation of as much of the estate as possible for distribution to creditors, against the public policy served by state regulation of toxic waste disposal, protection of the public health and safety. The court reasoned that the cost to the estate of proper disposal of the toxic waste did not outweigh the policy of protecting the public from the grave health threat inherent in unsafe toxic waste disposal. *Id.* at 921; *see also Ottenheimer v. Whitaker,* 198 F.2d 289 (4th Cir.), *aff'd* 102 F.Supp. 913 (D.Md.1952) (trustee may not abandon barges blocking harbor in violation of federal law and at the same time hold on to the valuable assets of the estate); *In re Lewis Jones, Inc.,* 1 Bankr.Ct. Dec. 277 (Bkrtcy.E.D.Pa.1974) (trustee's abandonment of underground steam pipes and vents conditioned upon first expending estate funds to render them non-hazardous to public).

Unlike the *Quanta* case, in a no-asset case like A & T Trailer Park, the question is not whether the trustee must expend the assets of the estate on compliance with the environmental laws before abandoning the property. Rather, because the estate has no assets, the question becomes whether or not the trustee may be required to bring the property into compliance *at his own expense.* In this court's view, the trustee may not be required to incur debt or otherwise expend his personal resources on the estates in his charge. To the extent that *Quanta* would require a different result, this court declines to follow it.

■ The State of Wyoming suggests that the trustee be compelled to operate the trailer park with the purpose of generating a fund from which the costs of compliance could be generated. Such a proposition is untenable for several reasons. First, in keeping with the main object and purpose of the Chapter 7 trustee, such a trustee is not authorized to operate a business. Under 11 U.S.C. § 721, the bankruptcy court is empowered to authorize the trustee to operate a business for just "a limited period" and only "if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate." Section 721 contemplates such authorization only in a limited number of situations, such as where it appears that a business could be sold for a greater price as a going concern than would be obtained in ordinary liquidation. The bankruptcy court will not generally grant authority to

**148**

continue a business under § 721 if an operating loss will result or if it would need to be continued beyond a limited time. 4 COLLIER ON BANKRUPTCY ¶ 721.03 at 721–2 (15th ed. 1985). The continued operation of the mobile home park is neither in the best interest of the estate nor consistent with the orderly liquidation of the estate.

In the alternative, the state asks that the trustee be required to hold on to the property until a solution to the dilemma of the unwanted mobile home park can be found. It argues that, if the trustee is allowed to abandon before a solution is reached, the property will fall into further disrepair "since no one, whether individual or corporation will assume responsibility for" it. Notwithstanding these arguments, the trustee's basic position with respect to the property remains unchanged. His main purpose is the orderly liquidation of the estate. In performance of that duty, he is authorized to abandon worthless or burdensome property. He is not authorized to operate the business. The practical effect of requiring the trustee to retain responsibility for the park would be that he would expose himself to personal liability for the operation or maintenance of a waste water treatment plant in violation of the state law. As the state correctly points out, the trustee must manage the property in his charge in compliance with the applicable state laws. *See* 28 U.S.C. § 959(b). It would be unfair, to say the least, if he were forced to retain responsibility for the property until liability for the environmental violations comes to rest with him when no funds exist in the estate from which he could effectuate compliance with state environmental laws. This is not a liability to which the court will subject Chapter 7 trustees.

The A & T Trailer Park has no value to the estate, and it is presently burdensome to the estate within the meaning of 11 U.S.C. § 554. Therefore, the trustee shall be authorized to abandon the property.