**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 02-2386**

———————————

In re:  SHAWNEE HILLS, INCORPORATED,

                                                          Debtor.

------------------------------------------------

DRAWBRIDGE SPECIAL OPPORTUNITIES FUND, L.P.,

                                        Plaintiff - Appellant,

        versus

SHAWNEE HILLS, INCORPORATED,

                                                       Defendant,

WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN
RESOURCES; PRESTERA CENTER FOR MENTAL HEALTH
SERVICES, INCORPORATED; U. S. DEPARTMENT OF
HEALTH & HUMAN SERVICES; WEST VIRGINIA HOUSING
DEVELOPMENT FUND; WEST VIRGINIA DIVISION OF
REHABILITATION,

                                           Parties in Interest,

DEBRA A. WERTMAN, United States Trustee,

                                                        Trustee,

        and

H. LYNDEN GRAHAM, JR., Chapter 7 Trustee,

                                            Trustee - Appellee.

———————————

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Joseph Robert Goodwin, District Judge. (CA-02-872-2; BK-02-20983)

---

Argued:  September 24, 2003                    Decided:  March 3, 2005

---

Before WIDENER, TRAXLER, and KING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Amy Marie Smith, STEPTOE & JOHNSON, P.L.L.C., Clarksburg, West Virginia, for Appellant.  Stephen L. Thompson, BARTH & THOMPSON, Charleston, West Virginia, for Appellee.  **ON BRIEF:** Michael L. Bray, STEPTOE & JOHNSON, P.L.L.C., Clarksburg, West Virginia, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Huntington National Bank ("Huntington") appeals from the district court's order dismissing its bankruptcy appeal as equitably moot. For the reasons stated below, we affirm the district court.[1]

I.

Debtor Shawnee Hills, Inc., ("Shawnee Hills") is a non-profit corporation that operates mental health, mental retardation, and alcohol counseling and rehabilitation facilities throughout West Virginia. On May 1, 2002, Shawnee Hills filed a voluntary petition for protection under Chapter 7 of the Bankruptcy Code. At the time, Shawnee Hills had roughly 775 employees and served approximately ten thousand patients.

On May 2, 2002, Shawnee Hills learned that employee payroll checks for its employees, written before Shawnee Hills filed its bankruptcy petition, were not being honored by two separate banks at which Shawnee Hills had deposit accounts: Huntington and City National Bank ("City National"). Shawnee Hills estimated that "when it filed [for bankruptcy,] there were outstanding checks for employee payroll and withholding taxes in the approximate amount of $15,000.00 written on its general operating account at Huntington

_____

[1]Huntington has sold its loans and claims to Drawbridge Special Opportunities, L.P., who is now the appellant. For ease of reference, we continue to refer to the appellant as Huntington.

3

National Bank and in the approximate amount of $818,000.00 on its account at City National Bank." J.A. 41. Later the same day, Shawnee Hills filed an emergency motion, seeking an order requiring Huntington and City National to honor outstanding payroll checks issued prior to the May 1st bankruptcy filing. The Trustee joined in the emergency motion, and the bankruptcy court scheduled an emergency hearing for 4:00 p.m. on May 2, 2002.

At the hearing, City National took no position and stated that it would take whatever action the court directed. Because of the short notice, counsel for Huntington could not attend the hearing in person, but did appear telephonically. Huntington's counsel objected to the short notice and argued that an order requiring the banks to honor the payroll checks written before the bankruptcy petition was filed would be improper because Huntington held a perfected security interest in the accounts receivable of Shawnee Hills, and that this security interest extended to the accounts at Huntington and City National.

At the conclusion of the emergency hearing, the bankruptcy court stated that the $15,000 in Huntington's account had adequate protection from insurance and other secured property, but stated that it was providing no protection for the City National account because it had "no idea how [Huntington] could have an interest in those funds." J.A. 55. The court granted the emergency motion and

4

entered an order requiring Huntington and City National to honor the pre-petition payroll checks written by Shawnee Hills.

The following day, Huntington filed a motion for reconsideration, again arguing that it had a perfected security interest in the funds and that it was not provided sufficient notice to allow it to advance this argument at the emergency hearing. Huntington attached copies of security agreements and filing statements to support its motion for reconsideration.

On May 15, 2002, the bankruptcy court held a hearing on Huntington's motion for reconsideration. After the hearing, the court entered an order denying the motion for reconsideration, finding that "Huntington Bank may be fully secured by sufficient real estate and other assets in addition to proceeds from accounts receivables and the deposit accounts now or formerly held by City National Bank and Huntington Bank which are the subject of Huntington Bank's Motion" and that insurance on Shawnee Hill's other properties provided "adequate protection" to Huntington. J.A. 106. Huntington appealed the bankruptcy court's decision to the district court. However, because Huntington did not seek a stay of the bankruptcy court's order, by the time its challenge reached the district court, the payroll checks had been cashed by the employees and honored by the banks.[2]

---

[2]According to the Trustee, as of July 5, 2002, approximately $498,136.78 in payroll employee checks had cleared the City National account, and approximately $15,000 in such checks had

5

On appeal to the district court, Huntington challenged the bankruptcy court's entry of the emergency order, arguing that the court had erred in its application of the Uniform Commercial Code and Bankruptcy Code, and that its order requiring the banks to honor the payroll checks had deprived Huntington of its interest in property without due process of law. The Bankruptcy Trustee responded by filing a motion to dismiss the appeal, arguing that the appeal was constitutionally and equitably moot.

Rather than addressing the merits of Huntington's challenge, the district court granted the Trustee's motion to dismiss the appeal as equitably moot. Noting Huntington's failure to seek a stay at any time during the pendency of the emergency order, the district court cited to the impracticality of recovering the wages paid to Shawnee Hill's employees.

> Huntington acknowledges that putting into effect a reversal of the Bankruptcy Court's order would involve disgorging funds from the employees who have cashed their payroll checks. . . . [A]s to the issue of equitable mootness, the question is . . . whether disgorgement is practicable. In this case, the cash collateral at issue has been distributed to many, probably hundreds, of Shawnee Hills employees. Tracking down these many employees, determining whether they are entitled to keep the funds as innocent transferees, and, if not, determining whether they are able to repay the funds, would be an impracticable, if not literally impossible, venture.

J.A. 132 (citation omitted). This appeal followed.

---

cleared the Huntington account.

"[T]he doctrine of <u>equitable</u> mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." <u>Mac Panel Co. v. Virginia Panel Corp.</u>, 283 F.3d 622, 625 (4th Cir. 2002); <u>see</u> <u>also</u> <u>In re US Airways Group, Inc.</u>, 369 F.3d 806, 809 (4th Cir. 2004). To determine whether a bankruptcy appeal has become equitably moot, we consider the following factors:

> (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties.

<u>Mac Panel</u>, 283 F.3d at 625.

Like the district court, we find that these factors weigh heavily in favor of a finding of equitable mootness. Most striking is that Huntington failed to seek a stay of the bankruptcy court's order. It is well-settled that the failure of a party to seek a stay of a bankruptcy order can alone render further appeal moot. <u>See</u> <u>Taylor v. Austrian</u>, 154 F.2d 107, 108 (4th Cir. 1946) (per curiam). Huntington did not seek a stay of the bankruptcy court's order after the initial emergency hearing or after the subsequent hearing on its motion to reconsider. The consequences of

Huntington's failure to seek a stay are evident. The bankruptcy court's order has been carried out and hundreds of Shawnee Hill employees have cashed (and likely spent) their payroll checks. And, it is highly unlikely that any other pre-petition checks remain outstanding and unpaid at this time. Thus, the bankruptcy court's order has been fully consummated. A reversal at this juncture would substantially affect the equitable relief granted and could significantly impact the third-party employees, who were not parties to the appeal and have received no notice that Huntington might seek to compel them to disgorge their wages. The district court held that any attempt to grant Huntington relief "would be impractical and would impose significant hardship on hundreds of employees who cashed their regular paychecks months ago and who are not parties to this appeal." J.A. 134. The district court's reasoning is sound and remains applicable -- the months that had passed since the payroll checks were cashed have now become years. Accordingly, we hold that the district court correctly determined that the equities in this case favor a determination that Huntington's appeal from the bankruptcy court is equitably moot.[3]

---

[3]The parties disagree as to whether we should review the district court's order de novo or for an abuse of discretion. Because we would affirm the district court under either standard, we need not resolve that question. We likewise express no opinion as to the merits of the bankruptcy order and note that, in view of the district court's dismissal of the appeal, we need not address Huntington's claim that the bankruptcy court deprived it of due

III.

For the reasons stated, we affirm the district court's order dismissing Huntington's appeal from the bankruptcy court as equitably moot.

AFFIRMED

---

process of law by failing to provide sufficient notice and opportunity to be heard.